# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Biran Foster Newton,<br><br>Plaintiff<br><br>v.<br><br>Las Vegas Metropolitan Police Department, et al.,<br><br>Defendants | Case No.: 2:13-cv-497-JAD-CHW<br><br>**Order Granting Defendants' Motion for Summary Judgment [Doc. 18]** |

*Pro se* Plaintiff Brian Foster Newton alleges that he was arrested and detained in violation of the United States Constitution and Nevada state law. Defendants, the Las Vegas Metropolitan Police Department ("Metro") and several of its employees, move for summary judgment on his claims, and Newton filed to filed no opposition. Finding that the uncontested admissible evidence fails to support Newton's allegations that his arrest was unlawful and his detention unreasonable, the Court grants Defendants' motion on all counts and enters summary judgment in their favor.

**Background**

On October 1, 2011, Plaintiff Brian Foster Newton was in Las Vegas, Nevada, on vacation with his girlfriend to celebrate the "Las Vegas Bike Fest," a gathering of motorcycle enthusiasts. Doc. 18-2 at 52. Metro had instructed its officers that the Bike Fest was a "zero tolerance" event, meaning that if officers had probable cause that any person had committed

a crime, they were to arrest that person. Doc. 18-1 at 25.

Late that night Newton, dressed in a red shirt and hat, jaywalked across a street in Downtown Las Vegas's Fremont Street Experience. Docs. 18-1 at 25-26; 18-2 at 52. Four Metro officers, including Officer John Quintana, were located in view of the crosswalk. *See* 18-1 at 26; 18-2 at 52. Newton caught Quintana's eye because Quintana knew by training that red was the color of the Hell's Angels, a motorcycle group that had recently been involved in a violent confrontation in a Nevada casino. Doc. 18-1 at 26. After Newton saw Quintana looking at him in an "accusatory manner," Newton asked him "why you looking at me like that," "do you have a problem," or similar words. Doc. 18-1 at 26; 18-2 at 52. The crowd around Newton noticed the confrontation, and appeared to be closing in on the site of the confrontation. Doc. 18-1 at 26. Quintana arrested Newton for jaywalking and disorderly conduct. *See* Docs. 18-1 at 26, 57; 18-2 at 52.

Quintana took hold of Newton's left wrist and placed his handcuffs on him, while another officer took hold of Newton's right wrist and placed handcuffs on him. *See* Docs. 18-1 at 26; 18-2 at 52. Newton was then led to an area where several police cars were located. Docs. 18-1 at 26; 18-2 at 52. He was not intoxicated and offered no resistance. Docs. 18-1 at 27; 18-2 at 52. During the one and a half hours during which he remained handcuffed, Newton complained of wrist and shoulder pain, and Quintana loosened his cuffs and later placed him in a third set of cuffs. Doc. 18-1 at 27. Quintana also re-adjusted Newton's position several times during the duration of his detention in the police car. *Id.*

Newton sued Metro, Officer Quintana, Sergeant Eric Roberson (Quintana's supervisor), and three unnamed Metro officers in Clark County state court on January 22, 2013. Doc. 1 at 6. He served Defendants with process on March 6, 2013, and then amended his complaint on March 12, 2013. *See id.* at 14, 22-23. Newton claims that Quintana, Roberson, and Does 1-3 negligently inflicted personal injuries on him, and that Metro is liable on a *respondeat superior* theory of liability. *Id.* at 18. He also brings a *Monell* claim under 42 U.S.C. § 1983 against Metro for the actions of Quintana, Roberson, and Does 1-3, alleging that the officers lacked probable cause to stop and arrest him in violation of his

1  Fourth and Fourteenth Amendment rights under color of law. *Id.* at 19.  Newton claims that
2  Metro had a "plan, scheme, custom and usage" to "rough up, detain and arrest people
3  wearing the color red at the Fremont Street Experience." *See id.*  Finally, Newton claims that
4  all defendants are liable to him for attorney's fees as port of the costs of suit pursuant to 42
5  U.S.C. § 1988. *Id.*

6  Defendants removed this case to federal court on March 22, 2013, and a discovery
7  plan was adopted.  Docs. 1, 10.  Newton's counsel was given leave to withdraw on July 3,
8  2013, and Newton has since proceeded *pro se*.  Docs. 14, 15.  Although the Court ordered
9  Newton to file a status report within 30 days to advise the Court of his intent to either
10 proceed *pro se* or retain new counsel, he filed none.  *See* Doc. 15.  Defendants submitted
11 discovery requests under Federal Procedure Rules 30, 33, and 34 on August 15, 2013, and
12 claim that no responses were received.  *See* Doc. 18 at 10-11.

13 On October 31, 2013, Defendants moved for summary judgment against Newton.
14 Newton received notice of the potential consequences of failing to oppose the motion for
15 summary judgment, Doc. 19, but failed to file a response.  *See* Doc. 20.  Having evaluated
16 Defendants' unopposed motion on its merits and recognizing that summary judgment may
17 not be granted merely because the motion is not opposed, the Court grants the motion and
18 enters summary judgment in Defendants' favor for the reasons set forth below.

**Discussion**

20 Summary judgment is appropriate when "the pleadings, depositions, answers to
21 interrogatories, and admissions on file, together with the affidavits, if any, show there is no
22 genuine issue as to any material fact and that the movant is entitled to judgment as a matter
23 of law."[1]  When considering the propriety of a summary judgment motion, the court views all
24 facts and draws all inferences in the light most favorable to the nonmoving party.[2]  If
25 reasonable minds could differ on the material facts at issue, summary judgment is not

---

[1] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[2] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

3

appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed.[3] The Court need only consider properly authenticated, admissible evidence in deciding summary judgment,[4] although it may consider other materials in the record.[5]

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[6] "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."[7] Rule 56(e)(2) states that "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[8]

As a general matter, the trial court may not grant an summary judgment motion as unopposed, but must consider whether the merits of the undisputed facts warrant entry of judgment against the non-moving party.[9] Where summary judgment is sought against a *pro se* defendant, the Court considers all of that party's contentions offered in motions and pleadings, so long as the information contained therein is made on personal knowledge, sets

---

[3] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[4] *Bank of Am. v. Orr*, 285 F.3d 764, 773-74 (9th Cir. 2002).

[5] Fed. R. Civ. Proc. 56(c)(3).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[7] *Celotex*, 477 U.S. at 324.

[8] *Id.*

[9] *See Heinemann v. Setterberg*, 731 F.3d 914, 917 (9th Cir. 2013). In so doing, *Heinemann* explicitly stated that a local rule which not only allowed an unopposed fact to be "deemed admitted," but further "permit[ted] the court to deem a non-movant's failure to respond to a complete abandonment of its opposition to summary judgment" was "the practice that the 2010 amendments to Rule 56 sought to eliminate." *Id.* In this District, Local Rule 7-2(b) states, "The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." *Id.* In light of *Heinemann*, this Rule cannot be extended to summary judgment motions.

forth facts that would be admissible as evidence, and was made under penalty of perjury.[10]

## A.   Not All Evidence Submitted Can Be Considered

As support for their motion, Defendants attach a Wikipedia article regarding "Outlaw motorcycle clubs" ("OMCs"), Doc. 18-1 at 2-13 (Exhibit A); a Wikipedia article about the "River Run Riot," a 2002 incident in Laughlin, Nevada, involving two purported OMCs, Doc. 18-1 at 15 (Exhibit B); an article from ABC News, documenting a shootout between two OMCs in a Sparks, Nevada, casino on September 25, 2011, shortly before the events in questions transpired, Doc. 18-1 at 17-18 (Exhibit C); another news article from a Reno, Nevada, newspaper detailing the shooting, Doc. 18-1 at 20-22 (Exhibit D); the Affidavit of Officer Quintana, Doc. 18-1 at 24-28 (Exhibit E); an October 18, 2011, telephonic interview between a member of Metro's Internal Affairs and Newton, Doc. 18-1 at 30-55 (Exhibit F); an October 1, 2011, "Temporary Custody Record" for Newton, which cited Newton for his failure to obey a traffic signal, and for disorderly conduct, Doc. 18-1 at 57 (Exhibit G); a November 3, 2011, Civilian Statement between "L. Chan" and "JB," Doc. 18-2 at 2-8 (Exhibit H); an October 12, 2011, administrative complaint from Newton, including an attached letter, Doc. 18-2 at 10-12 (Exhibit I); an October 13, 2011, letter from Metro Sheriff Douglas Gillespie to Newton, acknowledging receipt of his complaint, Doc. 18-2 at 14 (Exhibit J); a medical records for Newton from various sources, Doc. 18-2 at 16-25 (Exhibit K); a December 29, 2011, letter from Gillespie to Newton, noting that as a result of the internal investigation a policy violation had been sustained, Doc. 18-2 at 27 (Exhibit L); a list of Quintana's specific Metro training, Doc. 18-2 at 29-48 (Exhibit M); the Amended Complaint Newton filed in this action in Nevada state court, Doc. 18-2 at 50-56 (Exhibit N); a June 2, 2013, letter from Newton's former counsel to Defendant's counsel, stating his reasons for withdrawal and providing Newton's last known address, Doc. 18-2 at 58 (Exhibit

---

[10] *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted).  When a party proceeds *pro se* after being previously represented by counsel, courts have considered, on summary judgment, any documents submitted by that party in his or her *pro se* capacity.  *See Trustees of Construction Industry and Laborers Health and Welfare Trust v. Williams Brother, Inc.*, 2013 WL 3285424, at *2 (D. Nev. 2013).  Although it is unclear whether the Court should take into account any documents submitted while the now-*pro se* defendant was represented by counsel, any such distinction does not impact the outcome of this motion.

O); and an August 15, 2013, letter from Defendants' counsel to Newton that accompanied Defendants' Request for Admissions (served by mail on August 16, 2013), Doc. 18-2 at 62-68 (Exhibit P).

Defendants seek to introduce all of these exhibits through the Affidavit of Lyssa Anderson, who states that "[t]he documents attached to the Motion . . . are true and correct copies of documents produced, pleadings or papers filed, and notarized affidavits in this case." Doc. 18-2 at 71. Anderson also asserts that there is "sufficient foundation" for each of these documents to be received into evidence. *See id.* Anderson's Affidavit, however, is not adequate. Rule 56(c)(4) requires "[a]n affidavit or declaration used to support a motion [to] be made on personal knowledge. . . ."[11] As Federal Rule of Evidence 901 states that to properly authenticate a document, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[12] Anderson's Affidavit does not indicate that she has personal knowledge of Exhibits A through Q or adequately explain how she otherwise became familiar with the documents such that she can introduce them as a witness at trial. The Anderson Affidavit cannot serve as the basis for introduction of any of Defendants' exhibits.

Several of the exhibits do not need Anderson's Affidavit to be admissible. An affidavit supplied by Officer Quintana fills in some of these gaps. Quintana's affidavit independently satisfies Rule 56(c)(3) because he made it upon personal knowledge under penalty of perjury. *See* Doc. 18-1 at 24-27. The Court also considers the allegations in Newton's Amended Complaint, attached to the Motion for Summary Judgment at Exhibit N, to the degree they are supported by the Quintana Affidavit. Additionally, Newton's "Temporary Custody Record" is recorded as "Event 111001-4998"—the same number listed on Newton's Complaint. *Compare* Docs. 18-1 at 57, 18-2 at 51. The Court finds that this identical citation satisfies Rule 901(a). All other exhibits will be disregarded.

---

[11] Fed. R. Civ. Proc. 56(c)(4).

[12] Fed. R. Evid. 901(a).

6

**B.    Newton's 42 U.S.C. § 1983 Claim**

**1.    Probable Cause to Arrest Newton – Officer Quintana**

Defendants argue that Quintana had probable cause to arrest Newton because Newton committed a crime in his presence. Doc. 18 at 12. Quintana's affidavit states that Newton jaywalked, then yelled at Quintana in an aggressive fashion, which caused a large group of people to become agitated. *Id.* at 13. At this point, Quintana arrested Newton for jaywalking and disorderly conduct, fearing that if Newton was a Hell's Angels member, the crowd could become unruly. *Id.* Newton offers no response to negate this evidence, and the admissible documents do not lead the Court to a contrary conclusion.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ."[13] "Probable cause to arrest exists when officers have knowledge . . . sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."[14] Probable cause requires an objective inquiry.[15]

The undisputed facts show that Quintana directly observed Newton jaywalking and Newton then confronted Quintana in an aggressive manner. Quintana's decision to arrest Newton was objectively reasonable, given the totality of circumstances: Metro's direction that Bike Week was a "zero tolerance" event, Newton's confrontation of Quintana, Newton's wearing of colors that law enforcement recognizes reflective of a motorcycle club recently involved in violent confrontations in this State, and the fact that the crowd was closing in and becoming agitated. These circumstances demonstrate that Quintana had probable cause to arrest Newton, preventing Newton from establishing a § 1983 claim for the arrest.

---

[13] U.S. Const. Amend. IV.

[14] *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

[15] *Lopez*, 482 F.3d at 1072.

### 2. Excessive Force – Officer Quintana

Defendants further contend that Quintana and other Metro officers did not use excessive force against Newton, because the balance of Newton's liberty interests were outweighed by the government's interest in applying the force that it did. Doc. 18 at 13-14. Defendants argue that there is no allegation that Quintana tackled or struck Newton or otherwise inflicted pain on him while restraining him. Doc. 18 at 14. As to whether Newton's handcuffs were too tight, Defendants claim that Quintana originally used two sets of handcuffs to restrain Newton, given his large size; after Newton complained that he was uncomfortable, Quintana used a third set of cuffs. *Id.* at 14. Quintana attests that Newton never complained of shoulder pain while restrained. *Id.*

The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."[16] "The Fourth Amendment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot."[17] An officer who handcuffs a suspect too tightly may be liable under Section 1983,[18] although handcuffing is typically permissible unless the handcuffs cause injury, or the arresting officer ignores complaints of discomfort.[19]

Quintana attests that he originally adjusted the size of the cuffs to accommodate Newton's large size. Once Newton complained that the cuffs were too tight, Quintana loosened them. Although the Ninth Circuit notes that the inquiry is "usually fact-specific and likely to turn on the credibility of the witnesses,"[20] Newton has not opposed this motion and has not made any effort to go beyond the pleadings to show that the injuries he alleged to have suffered resulted from the handcuffing, nor has he challenged Quintana's statement that

---

[16] *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *receded from on other grounds*, 555 U.S. 223 (2009).

[17] *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001).

[18] *See, e.g.*, *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000).

[19] *C.B. v. City of Sonora*, 730 F.3d 816, 826 (9th Cir. 2013).

[20] *LaLonde*, 204 F.3d at 960.

8

he promptly and adequately responded to Newton's request to loosen the cuffs. Quintana also declares that Newton never complained about injuries to his shoulder or other body part, although he did adjust Newton's position several times to make him more comfortable. In all, the undisputed facts show that the conduct of Quintana and the other officers was objectively reasonable.

### 3. Failure to Supervise – Sergeant Roberson

Defendants also move for summary judgment on Newton's theory against Roberson, arguing that the arrest and detention in this case were based on Quintana's direct observation, as corroborated by other officers. Doc. 18 at 15. Although Roberson was technically Quintana's supervisor, he had no direct involvement in the arrest and was not even interviewed by Internal Affairs in connection with Newton's complaint. Doc. 18 at 15.

There is no *respondeat superior* liability under § 1983.[21] Thus, a government official will only be held liable in his or her individual capacity if the plaintiff alleges that "each Government-official defendant, through the official's own individual actions, has violated the Constitution."[22] "The plaintiff in a Section 1983 action must allege *some* culpable action or inaction for which a supervisor may be held liable."[23] The Plaintiff must also prove a sufficient causal connection exists between the wrongful conduct and the constitutional violation; a claim that a supervisor engaged in a "conspiracy to deprive [plaintiff] of her rights" will not do.[24]

There is no evidence that Roberson was present when Quintana arrested Newton or anytime thereafter, or that Quintana's conduct followed directions or implemented policies that were otherwise unlawful. Newton's claim against Roberson for supervisory liability thus fails as a matter of law.

---

[21] *See Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[23] *Moss v. United States Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) (quotation omitted) (emphasis in original).

[24] *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

9

### 4.      *Monell* **Claim – Metro**

Newton also claims that Metro is liable to him under a *Monell* theory of liability. Typically, "[t]o state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege the following: (1) that the conduct that harmed the plaintiff was committed under color of state law; and (2) the conduct violates a constitutional right."[25]  Under *Monell v. Department of Social Services*, a municipality cannot be held liable under a theory of *respondeat superior*, but only for its own policies, practices, or customs that inflict injury upon a plaintiff.[26] Again, the Court has no admissible evidence that in arresting and detaining Newton for jaywalking and disorderly conduct in accordance with the "zero tolerance" policy adopted for Las Vegas Bike Week, that Quintana followed an unlawful policy, practice, or custom promulgated by Metro. Newton's § 1983 claim against Metro similarly fails.

In sum, the Defendants have offered sufficient evidence to satisfy their burden on summary judgment and shift the burden to Newton to come forward with evidence of a genuine issue of fact to support any theory under § 1983 to satisfy his obligation in this summary judgment process. Accordingly, summary judgment is entered in the Defendants' favor on Plaintiff's § 1983 claim.[27]

### C.      **Negligence Claim – All Defendants**

Defendants also move for summary judgment on Newton's negligence claim. Doc. 18. Although Nevada has generally waived its sovereign immunity, no action may be brought against a state actor "[b]ased upon the exercise of performance of the failure to exercise or perform discretionary function or duty on the part of the state or any of its agency or political subdivisions of any officer, employee or immune contractor of any of these,

---

[25] *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987).

[26] *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

[27] Roberson also claims that all defendants are liable to him for attorney's fees under 42 U.S.C. § 1988. Doc. 1 at 19. Since such fees are typically awarded only to prevailing parties in § 1983 actions, and since Newton has not prevailed on his § 1983 action, attorney's fees under § 1988 cannot be awarded.

10

whether or not the discretion involved is abused."[28]  The Nevada Supreme Court has adopted the Federal Tort Claims Act's "discretionary function" test for immunity, which provides that "to fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy."[29]  Covered actions can occur "at all levels of government, including frequent or routine decisions . . . if the decisions require analysis of government policy concerns."[30]  Immunity is not based on a blanket application to specific categories of acts; instead, each application must be evaluated in light of the particular facts.[31]

In this case, although Metro had instituted a "zero tolerance" enforcement policy in connection with Las Vegas Bike Week, Quintana's decision to arrest Newton was based on the officer's appraisal of the specific fact that Newton had jaywalked.  The manner of arrest was within Quintana's discretion, and he decided to use two—and eventually three—sets of handcuffs to secure Newton on account of Newton's size.  The record is devoid of any evidence that Quintana evinced a hostility towards motorcycle enthusiasts or persons wearing the color red or that Quintana deliberately disregarded Newton or any groups he may have associated with.  This record—unopposed by Newton—reflects simply that Quintana arrested a belligerent jaywalker, an action for which this officer enjoys immunity from liability under Nevada law.  Thus, Newton's negligence claim similarly fails as a matter of law and for lack of evidentiary support.

---

[28] NRS § 41.032(1)-(2).

[29] *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).

[30] *Id.*

[31] *See id.*  Nevada courts predating *Martinez* found that police officers were exercising discretion when choosing whether to handcuff arrestees in the front or the back, such that they were performing discretionary functions and entitled to protection under NRS § 41.032(2).  *See Maturi v. Las Vegas Metropolitan Police Department*, 871 P.2d 932, 309-10 (Nev. 1994).  However, *Maturi* and other cases utilized a "discretionary-versus-ministerial" test, which *Martinez* explicitly abrogated.  Moreover, in *Maturi* the Court reached its conclusion in part by relating the officers' conduct to the applicable policy manuals.  Such guidance is not specifically available in this case.

11

**Conclusion**

Accordingly, with good cause appearing and no reason for delay,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. 18] is **GRANTED**. Judgment is hereby entered in favor of the Defendants and against the Plaintiff on all claims. The clerk shall enter judgment accordingly.

Dated: May 5, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE